**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CARL FOSTER, | |
| Plaintiff, | |
| v. | Civil Action No. 11-1931 (BAH) |
| | Judge Beryl A. Howell |
| RAY MABUS, *Secretary of the Navy*, *et al.* | |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiff Carl M. Foster brings this action against Ray Mabus, Secretary of the Navy,

Rear Admiral David F. Steindl of the United States Navy, and Major General Raymond C. Fox

of the United States Marine Corps under the Administrative Procedure Act ("APA"), 5 U.S.C.

§ 702 *et seq.*, seeking injunctive relief.  The plaintiff is a former instructor in the Marine Corps

Junior Reserve Officer Training Corps ("MCJROTC") and the Navy Junior Reserve Officer

Training Corp ("NJROTC") but was decertified as an instructor following allegations of

misconduct.  The plaintiff seeks vacatur of these decertification actions and reinstatement of his

certification as an instructor in both the MCJROTC and NJROTC programs.

## I.     BACKGROUND

The plaintiff enlisted in the United States Marine Corps in September of 1977 and was

ordered to active duty on May 24, 1978.  Compl. ¶ 3, ECF No. 1; Administrative Record ("AR")

at 131, ECF No. 6.  The plaintiff served over twenty-one years on active duty in primarily supply

and logistics positions before retiring as a Master Sergeant (E-8) in October 1999.  Compl. ¶ 4;

AR at 131.  In April 1999, shortly before his retirement from active duty, the plaintiff was

certified as an MCJROTC instructor for a period of four years.  Compl. ¶ 5; AR at 128.

The Junior Reserve Officers' Training Corps ("JROTC") is a military service program in high schools throughout the nation, sponsored by the Armed Forces.  *See* 10 U.S.C. § 2031.  In the Navy, the program is known as the NJROTC, and in the Marine Corps the program is known as the MCJROTC.  Compl. ¶ 7; Def.'s Statement of Material Facts as to Which There Is No Genuine Dispute ("Def.'s SMF") ¶ 2, ECF No. 8.  The plaintiff was hired to be an MCJROTC instructor at Amite High School in Amite, Louisiana in December 1999.  *Id*. ¶ 9; Def.'s SMF ¶ 4.[1]  The Marine Corps recertified the plaintiff as an MCJROTC instructor twice more, in 2003 and 2007 (each for a period of four years), and he continued as an instructor at Amite High School throughout this time.  AR at 113, 123.  On April 17, 2010, the NJROTC certified the plaintiff as a Naval Science Instructor for a period of three years.  *Id.* at 217.

A.      **First Decertification Proceeding**

On April 22, 2009, the plaintiff submitted two purchase request documents ("PRDs") for the use of MCJROTC funds to support leadership training for five cadets at Louisiana Tech University.  *Id.* at 331.  The trip was cancelled, but the funding remained obligated, and the plaintiff later called Bill Herriman (an MCJROTC Purchasing Agent) to request that the funding be used instead for "leadership training" from September 10 to 13, 2009.  *Id*.  The funding was approved, and a later call from the plaintiff to Cammie Herriman (MCJROTC Budget Manager) requesting an increase in funding due to increased costs was also approved.  *Id*.

The September 2009 trip involved the Amite High School cross-country team, which the plaintiff coached.  *Id*.  To use the MCJROTC funds, students who attended the trip had to be members of the MCJROTC.  Compl. ¶ 16; AR at 331.  Of the twelve cross country team students

---

[1] Because the plaintiff did not submit a "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated," the Court presumes that the plaintiff admits all material facts stated by the defendants, and thus there are no genuine issues of material fact that would preclude summary judgment.  *See* LCvR 7(h)(1).

who went on the trip, however, only seven were cadets of the MCJROTC.  Compl. ¶ 17; AR at

331.  The plaintiff alleges that, with the approval of Principal Michael Stant and Lieutenant

Colonel Bias ("Lt. Col. Bias")—the Senior Marine Instructor at Amite High School and the

plaintiff's immediate Marine superior—he decided to name non-MCJROTC members of the

cross country team as substitute participants for the trip because the cross-country team was

targeted for recruitment.  Compl. ¶ 16.

On September 11, 2009, the day after the plaintiff left for the trip, Lt. Col. Bias contacted

Lieutenant Colonel Strohman ("Lt. Col. Strohman")—the Regional Director of the MCJROTC

region in which Amite High School is located and Lt. Col. Bias's immediate Marine superior—

and informed him that "there might be some inconsistencies regarding PRD's and a trip being

sponsored by Amite High School to Destin, Florida."  AR at 331.  The plaintiff has consistently

contended that Lt. Col. Strohman "in fact was aware of the non-cadet participation."  Pl.'s Opp'n

to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 3, ECF No. 10; *see also* AR at 162 (plaintiff's

statement that "[Lt. Col. Bias] was briefed on all the new details of the coordination" for the

September 2009 trip); *id.* at 414 (Principal Stant's statement that "he had a problem believing

[Lt. Col.] Bias was not aware of the Destin trip plans").  On September 17, 2009, W. E.

McHenry ("Dr. McHenry"), Director of the MCJROTC program, appointed Lt. Col. Strohman to

conduct a preliminary investigation into the "legitimacy of [the two] PRD's as they relate to the

direct support of the [MCJROTC] Program at Amite High School."  *Id.* at 329.

Lt. Col. Strohman filed a report of his preliminary investigation on September 22, 2009,

which concluded that there was "zero leadership training or any MCJROTC training" conducted

on the September 2009 trip, that not all of the students who went on the trip were MCJROTC

cadets, and that the cost of the trip totaled $2,656.45.  *Id.* at 330–32.  On September 23, 2009,

Dr. McHenry notified the plaintiff that he was being considered for decertification as a result of his "alleged misappropriations of government funds," and that he "ha[d] [the] opportunity to submit both a statement and any materials [he] fe[lt] [were] germane and pertinent." *Id.* at 327. On October 5, 2009, the plaintiff submitted a written statement regarding the incident. *Id.* at 325.

On November 16, 2009, Dr. McHenry forwarded Lt. Col. Strohman's report, the plaintiff's acknowledgment of decertification proceedings (including the plaintiff's written statement), and Dr. McHenry's September 23 notification letter to the Commanding General of Training and Education Command ("TECOM"), who is the Marine Corps officer responsible for final adjudication of decertification decisions. *Id.* at 323. Based upon Lt. Col. Strohman's report and the plaintiff's written statement, Dr. McHenry recommended that the plaintiff be immediately decertified, stating that the plaintiff "ha[d] brought discredit upon himself and the established MCJROTC Unit at Amite High School by . . . [attempting] to defraud the government by submitting . . . two [PRD's] totaling $2656.45." *Id.* at 323.

On January 6, 2010, Commanding General M. G. Spiese of TECOM declined to decertify the plaintiff. *Id.* at 321. General Spiese stated in his decision that "[t]his does not imply a lack of seriousness of this incident, nor condoning this in any way," and he decided that the plaintiff "[would] be provided an opportunity to make the appropriate adjustments in his approach to his MCJROTC duties." *Id.* General Spiese directed Lt. Col. Strohman to counsel the plaintiff, "in writing, regarding his attempted misuse of MCJROTC administered funds," and to notify the plaintiff that "any future impropriety or misconduct can result in the loss of his instructor certification." *Id.*

4

Lt. Col. Strohman sent the plaintiff a "Counseling Statement" on January 28, 2010, which stated, *inter alia*, that the plaintiff was to "execute [his] duties as the Marine Instructor under the cognizance and supervision of [Lt. Col. Bias]," and that the plaintiff was no longer authorized to "make decisions concerning, or handle [MCJROTC] funds." *Id.* at 319.  Per Lt. Col. Strohman's letter, from that point forward any PRDs for MCJROTC funds had to be "signed or initialed by [Lt. Col. Bias]." *Id.*  The Counseling Statement concluded by stating that the plaintiff's "future actions [would] be watch[ed] closely by [Lt. Col. Bias] and [Lt. Col. Strohman]," and that Lt. Col. Strohman would "not tolerate the slightest slip in performance or judgment in [the plaintiff's] actions that reflect on [his] character or the performance of [his] assigned duties as a Marine Instructor." *Id.* at 320.  In accordance with this counseling, Lt. Col. Bias notified Principal Stant, the plaintiff, and the Purchasing Agent for Amite High School that "all expenditures from MCJROTC accounts . . . require the signature of [Lt. Col. Bias]," and that "[e]xpenditures not approved by [Lt. Col. Bias] shall not receive funding from MCJROTC accounts.  It is, therefore, imperative that approval is sought prior to making purchases that require reimbursement from MCJROTC accounts." *Id.* at 411.

### B.    Second Decertification Proceeding

On February 22, 2010, Principal Stant asked the plaintiff to organize a concession booth at the school's basketball game on February 26, 2010, the proceeds from which were to go to the school's weightlifting program, which is not associated with the MCJROTC. *Id.* at 356, 359–61. The plaintiff stated that he had previously "prepared a hand written purchase order dated [February 9, 2010] for [the] acquisition of . . . concession items" for an event on February 15, 2010, the proceeds from which were to go to MCJROTC. *Id.* at 356.  According to the plaintiff, because the February 15 event was intended to raise funds for the MCJROTC, the plaintiff had

written "JROTC" on the account line for the February 9 purchase order.  *See id.* at 362 (purchase order form).  The February 9 purchase order form was never processed and went unused because the plaintiff was unable to attend the February 15 event.  *Id.* at 356.  When Principal Stant subsequently asked the plaintiff to organize the basketball concession stand, the plaintiff says that he "decided to adjust the quantities and use the same [February 9] purchase order," which still had the "JROTC" written in account line even though both the plaintiff and Principal Stant understood that the funds were to be debited from the school's general fund account.  *Id.* at 356–57, 362.  The purchase order for $197.57 was signed by Principal Stant, and the funds were consequently debited from the MCJROTC account.  *See id.* at 352, 357, 362, 367.  The plaintiff contends, with the corroboration of Principal Stant, that the only reason that the MCJROTC account was debited was because of a new bookkeeper at the school who was unaware that the funds were for a school event, rather than an MCJROTC event.  *See id.* at 415–16; Pl.'s Opp'n at 4.

Upon reviewing the quarterly report for MCJROTC funds, Lt. Col. Bias noticed the withdrawal of funds and notified Lt. Col. Strohman.  *Id.* at 340.  Lt. Col. Strohman later reported that, when he spoke with the plaintiff regarding the withdrawal of funds in February, the plaintiff said that "he felt that because the Principal asked him to go get the concessions for the basketball game that he did not need approval from [Lt. Col. Bias] in order to access MCJROTC activity account funds."  *Id.* at 341.  The misappropriated funds were later returned to the MCJROTC account by Principal Stant, *see id.* at 410, who wrote a letter on April 13, 2010, detailing how the withdrawal was a "paperwork error" that was "[d]ue to [a] change in bookkeepers.," *id.* at 416.  Lt. Col. Strohman reported that the misappropriation was not due to a clerical error, but rather was "an error on the part of [the plaintiff] to request the money out of the [MCJROTC] account

and a clear violation of the directives given to him by [Lt. Cols. Bias] and [Strohman]."  *Id.* at 340.

In addition to the issues with the misappropriation of MCJROTC funds, Lt. Cols. Bias and Strohman contemporaneously noted issues with the plaintiff's attitude and commitment to the MCJROTC program.  In his May 27, 2010 evaluation of the plaintiff's performance as an instructor, which rated the plaintiff overall as "below average," Lt. Col. Bias stated that he did "not believe that [the plaintiff] keeps the MCJROTC program as his top priority."  *Id.* at 180–81. In the same evaluation, Lt. Col. Bias stated that the plaintiff had "taken the position of not doing anything he is not specifically instructed to undertake," including his "failure to attend a mandatory meeting with parents of cadets."  *Id.* at 182.  Lt. Col. Bias also noted the plaintiff's "general distrust of [Lt. Cols. Bias] and [Strohman]," and the plaintiff's "unprofessional behavior."  *Id.*  Lt. Col. Strohman similarly reported in April 2010 that "[w]hen directed by [Lt. Col. Bias] to accomplish a task, [the plaintiff] would comment that it was not directed in the counseling letter."  *Id.* at 340–41.

On June 21, 2010, Lt. Col. Strohman initiated a second request to decertify the plaintiff. *Id.* at 337.  On July 14, 2010, Dr. McHenry recommended that the plaintiff be decertified.  *Id.* at 178, 334.  The Staff Judge Advocate, another component within TECOM, however, recommended not to decertify, citing the fact that he was "not convinced this was anything more than a clerical error" after reviewing the statements of the plaintiff and Principal Stant.  *Id.* at 178.  On July 27, 2010, the Commanding General decertified the plaintiff, stating:  "I have carefully considered the information provided concerning your second misuse of funds.  I have determined that your continued service as a Marine Instructor with the MCJROTC Program is not in the best interests of the U.S. Marine Corps."  *Id.* at 226.

On July 28, 2010, the Marine Corps TECOM notified the Naval Service Training

Command that they had decertified the plaintiff, and on August 9, 2010, the Naval Service

Training Command notified the plaintiff that he was being considered for decertification as a

NJROTC instructor by the Department of the Navy.  *Id.* at 305.  The NJROTC Instructor

Certification Board Review Remarks Sheet, dated August 20, 2010, recommended

decertification, citing the fact that the plaintiff "stopped doing his job including not attending

mandatory meeting with parents of cadets," and that the plaintiff elected to "<u>NOT</u> make [written]

comments" after receiving a "Below Average" evaluation which "could have been beneficial to

his cause."  *Id.* at 311–12.  Included in the NJROTC Certification Board's recommendation was

the observation that "[t]his is a difficult call but since [the reviewer] do[es] not have all the

Findings the MCJROTC program had when they decided to decertify, [the reviewer] must trust

the system including the investigation and findings."  *Id.* at 312.  As a "final thought," the

reviewer stated that "if the MCJROTC decertified him, how can our program not do the same?

If we did not decertify and something happens, think of the mess we'd be in then!"  *Id.*  The

plaintiff was notified on August 31, 2010 that the NJROTC Instructor Certification Board did not

recommend his continued certification as a Naval Science Instructor in the NJROTC program.

*Id.* at 309.

On July 21, 2011, the plaintiff sent a letter to Department of the Navy in an attempt to

appeal the NJROTC Instructor Certification Board's decision, raising three grounds to set aside

the Board's decision:  (1) the Board had not identified what the grounds were for the

decertification; (2) a private investigation had "revealed some questionable antics" by Lt. Col.

Bias; and (3) a polygraph examination had concluded that the plaintiff was telling the truth about

not intentionally taking JROTC funds or falsifying documents and believing that Lt. Col. Bias

was aware that non-JROTC students were participating in the September 2009 trip to Florida. *Id.* at 260–61.  Rear Admiral David Steindl of the U.S. Navy replied on September 7, 2011 that he concurred with the Board's decision.  *Id.* at 315.

Rear Admiral Steindl found the plaintiff's arguments "unpersuasive." *Id.* at 316.  First, the Rear Admiral noted that the August 9, 2010 letter to the plaintiff stated that the Navy was considering revoking his certification as a "result of [the plaintiff's] decertification as a [MCJROTC] instructor," and that the relevant Navy regulation "authorizes us to consider revocation when we determine that 'the conduct, performance, and evaluations of an instructor' indicate that 'continued certification is not in the best interests of the JROTC program." *Id.* Second, the Rear Admiral stated that Lt. Col. Bias's conduct "is not relevant and has no bearing on our decision" because "the conduct at issue is that of [the plaintiff]." *Id.*  Finally, the Rear Admiral stated that "intent to misuse funds or falsify documents is not and has never been the salient issue," that "[w]hether [the plaintiff] took this action intentionally or negligently is not the point," and that "[a]ny misuse, however motivated, of federal tax dollars is unacceptable, especially following a written directive to have no role in allocating federal funds." *Id.*

On August 29, 2011, the plaintiff requested reconsideration of the MCJROTC decertification decision from the current Commanding General of TECOM, *id.* at 379, but the Commanding General of TECOM has yet to grant the plaintiff's request.  *See* Compl. ¶ 49; Def.'s SMF ¶ 9.

The plaintiff filed the Complaint in the instant action on November 2, 2012.  Pending before the Court are the defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 8, and the plaintiff's Cross-Motion for Summary Judgment, ECF No. 10.

For the reasons discussed below, the Court denies the defendant's motion and grants the plaintiff's motion.

## II.     STANDARDS OF REVIEW

### A.     <u>Summary Judgment</u>

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute.  *Id.* at 323.

In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in favor of the nonmoving party and shall accept the nonmoving party's evidence as true.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011).  The Court is only required to consider the materials explicitly cited by the parties, but may on its own accord consider "other materials in the record." FED. R. CIV. P. 56(c)(3).  For a factual dispute to be "genuine," the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position, *Liberty Lobby*, 477 U.S. at 252, and cannot simply rely on "mere allegations" or conclusory statements, *see Veitch v. England*, 471 F.3d 124, 134 (D.C. Cir. 2006); *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993); *accord* FED. R. CIV. P. 56(e).  Rather, the nonmoving party must present specific facts that would

enable a reasonable jury to find in its favor. *See, e.g.*, FED. R. CIV. P. 56(c)(1). "If the evidence

is merely colorable, or is not significantly probative, summary judgment may be granted."

*Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).

### B.  <u>Administrative Procedure Act</u>

Under the APA, 5 U.S.C. § 706(2)(A), an agency action may be overturned if it is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Marsh v.*

*Or. Natural Res. Council*, 490 U.S. 360, 375 n. 21 (1989). Review of agency actions under the

"arbitrary and capricious" standard is "highly deferential" and "presumes the agency's action to

be valid." *Envtl. Def. Fund, Inc. v. Castle*, 657 F.2d 275, 283 (D.C. Cir. 1981). In assessing an

agency decision, the Court reviews whether "the decision was based on a consideration of the

relevant factors and whether there has been a clear error of judgment." *Citizens to Pres. Overton*

*Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds*, *Califano v. Sanders*,

430 U.S. 99, 105 (1977). "The scope of the Court's review under this standard 'is narrow and a

court is not to substitute its judgment for that of the agency.'" *United Steel v. Pension Benefit*

*Guar. Corp.*, 839 F. Supp. 2d 232, 245 (D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n v.*

*State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983)). "In exercising its narrowly defined

duty under the APA, a court must consider whether the agency acted within the scope of its legal

authority, whether the agency adequately explained its decision, whether the agency based its

decision on facts in the record, and whether the agency considered the relevant factors."

*Defenders of Wildlife v. Babbitt*, 958 F. Supp. 670, 679 (D.D.C.1997) (citing *Marsh*, 490 U.S. at

378).

III.    **DISCUSSION**

A.    <u>**Committed to Agency Discretion**</u>

The defendants first argue that the decertification decisions of the Marine Corps and the

Navy are non-justiciable[2] because they are "committed to agency discretion."  *See* Def.'s Mem.

at 12–15; Def.'s Reply in Supp. Mot. Dismiss or, in the Alternative, for Summ. J. and Opp'n to

Cross Mot. Summ. J. ("Def.'s Reply") at 3–6, ECF No. 13.  The defendants contend that the

standard by which the Navy and Marine Corps make decertification decisions, *i.e.*, whether

doing so is "in the best interests" of the military branch, does not provide a judicially

manageable standard, which precludes APA review.  Def.'s Mem. at 13–15; Def.'s Reply at 5–6.

There exists a "strong presumption that Congress intends judicial review of

administrative action."  *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986).

Therefore, "judicial review of a final agency action by an aggrieved person will not be cut off

unless there is [a] persuasive reason to believe that such was the purpose of Congress."  *Abbott*

*Labs. v. Gardner*, 387 U.S. 136, 140 (1967), *abrogated on other grounds*, *Califano*, 430 U.S. at

105.  The APA provides that final agency actions are "subject to judicial review."  5 U.S.C.

§ 704.  The only statutory exceptions to this rule are if a particular statute "preclude[s] judicial

review" or if "agency action is committed to agency discretion by law."  *Id.* § 701(a).  The

former exception "is concerned with whether Congress expressed an intent to prohibit judicial

review."  *Webster v. Doe*, 486 U.S. 592, 599 (1988).  The latter exception applies "in those rare

instances where 'statutes are drawn in such broad terms that in a given case there is no law to

apply.'"  *Citizens to Preserve Overton Park*, 401 U.S. at 410; *see also Heckler v. Chaney*, 470

U.S. 821, 830 (1985) (exception for action "committed to agency discretion" applies "if the

---

[2] *See Oryszak v. Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009) ("That a plaintiff complains about an action that is committed to agency discretion by law . . . does not mean, therefore, the court lacks subject matter jurisdiction." (citing *Baker v. Carr*, 369 U.S. 186, 198 (1962))).

statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion").

The Supreme Court has held that, deciding whether the "committed to agency discretion" exception applies "requires careful examination of the statute on which the claim of agency illegality is based." *Webster*, 486 U.S. at 600.  In addition to the statutory language, "[j]udicially manageable standards may be found in formal and informal policy statements and regulations." *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987).  In other words, the "no law to apply" standard is satisfied when there are "no legal norms pursuant to which to evaluate the challenged action." *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002).

First, the Court observes that the defendants' argument that the "best interests" standard, by itself, precludes judicial review, is incorrect.  The "best interests" standard was not the standard legislated by Congress, but rather was the standard promulgated by the agencies themselves.  "The key to any determination of reviewability is *congressional* intent," *Ramah Navajo Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1343 (D.C. Cir. 1996) (emphasis added), and thus the mere fact that an agency wishes to commit certain decisions to its own discretion carries only minimal weight, if any, in deciding whether a decision is "committed to agency discretion" under the APA.

Beginning with the statutory language, there are a number of potential standards against which to evaluate the discretion exercised in decertification decisions.  Although the statute is silent regarding decertification, it contains a number of standards underlying *certification*.  *See* 10 U.S.C. § 2033 (basing certification on "professional activities [and] services to the profession," as well as "content knowledge and instructional skills," and "performance evaluation of competencies and standards within the program").  These standards are instructive

because, understanding what Congress intended certification of instructors to be based upon can assist a court in deciding whether an agency's decision to revoke that certification was rational.

Furthermore, because the Court may look to "formal and informal policy statements and regulations" to find judicially manageable standards, the Court will also consider agency guidance from the Marine Corps and the Navy in determining whether judicially manageable standards exist.  *See Padula*, 822 F.2d at 100.  One thing that is clear from both the statute and the agency guidelines is that annual performance evaluations of JROTC instructors are a highly relevant consideration in the decertification decisionmaking process.  *See* 10 U.S.C. § 2033 (basing certification on "performance evaluation of competencies and standards within the program"); Marine Corps Order ("MCO") 1533.6E, at 3-3 (2008) (requiring "thorough" annual performance evaluation and telling Regional Directors to "[r]ecommend for decertification instructors whose performance is unsatisfactory or where a preponderance of evidence indicates that the instructor's conduct is prejudicial to the goals and objectives of the program"); CNET Instruction 1533.9K § 413 (2005) ("Certification will be revoked . . . [if] [u]pon consideration of the conduct, performance, and evaluations of an [instructor] by the school and/or designated inspectors, CNET determines that continued certification of the instructor is not in the best interests of the program.").

Because the plaintiff was only certified as an NJROTC instructor for a little over four months in 2010, it appears that he never underwent an NJROTC performance evaluation.  The plaintiff did, however, receive numerous performance evaluations over the course of his eleven years of service in the MCJROTC program.  Those evaluations contain a rubric of fourteen facets of MCJROTC classroom instruction, ranging from "Instructor Planning and Preparation" to "Personal Appearance" to "Discipline."  *See* AR at 250.  The evaluations also contain a space

for the Senior Military Instructor to "[c]omment[] on the major strengths and weaknesses of the Instructor." *Id.* Additionally, because the Marine Corps guidance enjoins Regional Directors to recommend for decertification any instructors whose "conduct is prejudicial to the goals and objectives of the program," such goals and objectives—for example, helping students "[d]evelop[] an understanding of leadership skills and the advantages of strong moral character" and "[d]evelop[] in students a sense of pride and personal discipline and responsibility," MCO 1533.6E, at 1-1—are yet another source of judicially manageable standards by which to assess the exercise of agency discretion.

The defendants rely heavily on an unreported district court case from outside this Circuit, which held that JROTC decertification decisions are committed to agency discretion, *see Glenn v. Rumsfeld*, No. 05-1787, 2006 WL 515626 (N.D. Cal. Feb 28, 2006), but the Court finds the reasoning of *Glenn* unpersuasive. The court in *Glenn* did not consider the contents of MCO 1533.6E or the fact that decertification decisions depend at least in part upon whether his "conduct is prejudicial to the goals and objectives of the program" and whether his "performance is unsatisfactory." *See id.* at *5 ("Nor do the remaining provisions of the MCJROTC SOP provide this Court with any guidance as to what would or would not be 'in the best interests of the Marine Corps.'"). Furthermore, *Glenn* and other courts have placed too much weight upon the purported "military" or "operational" nature of decertification decisions. *See id.* at *3; *see also Norris v. Lehman*, 845 F.2d 283, 286 (11th Cir. 1988) ("[T]he decision to decertify [appellant] as an NJROTC instructor was essentially a military one."). As this Circuit has recognized, unlike the statute at issue in *Webster v. Doe*, adjudicating the "status of a *former* member of the armed services is [not] a decision so imbued with national security concerns as to

require bypassing regular review procedures." *Dickson v. Sec'y of of Defense*, 68 F.3d 1396, 1403 (D.C. Cir. 1995).

This is not to say that the subjective nature of decertification decisions does not impart considerable discretion upon the Marine Corps and the Navy, but "deferential review is not the same as no review at all." *Dickson*, 68 F.3d at 1406 n.17. Review of these decertification decisions "helps ensure that a second tier of 'secret law' absolving some but not others from the rigors of the statute does not impugn the equality of the principal law which does receive the benefit of judicial review." *Id.* Thus, based upon the contents of 10 U.S.C. § 2033 and the formal and informal agency guidelines governing the certification and decertification of JROTC instructors, the Court concludes that judicially manageable standards exist for reviewing the agencies' exercises of discretion in this case.

**B.**     **Arbitrary and Capricious Review**

In passing upon adjudications like the decertification decisions at issue in the instant action, agencies are "required to 'examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *NetCoalition v. SEC*, 615 F.3d 525, 532 (D.C. Cir. 2010) (internal quotation marks omitted) (quoting *State Farm*, 463 U.S. at 43). "A 'fundamental' requirement of administrative law is that an agency 'set forth its reasons' for decision; an agency's failure to do so constitutes arbitrary and capricious agency action." *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001) (quoting *Roelofs v. Sec'y of the Air Force*, 628 F.2d 594, 599 (D.C. Cir. 1980)). "The agency's statement must be one of 'reasoning'; it must not be just a 'conclusion'; it must 'articulate a satisfactory explanation' for its action." *Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (quoting *Tourus Records*, 259 F.3d at 737). "This does not mean that an

agency's decision must be a model of analytic precision," though "an agency's explanation must minimally contain 'a rational connection between the facts found and the choice made.'" *Dickson*, 68 F.3d at 1404 (quoting *State Farm*, 463 U.S. at 43).   In conducting this review, a court is "attempting to identify whether 'the decision making process was deficient, not whether [the] decision was correct.'"  *Id.* at 1405 (alteration in original) (quoting *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989)).

In this case, neither the Marine Corps nor the Navy have met the minimal requirement of providing a "rational connection between the facts found and the choice made."  *See State Farm*, 463 U.S. at 43.   Beginning with the Marine Corps, General Spiese's two-sentence explanation for his decision could be read to include only two things:  (1) a factual finding that the plaintiff had engaged in a "second misuses of funds"; and (2) a conclusion that the plaintiff's "continued service as a Marine Instructor with the MCJROTC Program is not in the best interests of the U.S. Marine Corps."  AR at 226.   In issuing this decision, however, General Spiese "omitted the critical step—connecting the facts to the conclusion."  *Dickson*, 68 F.3d at 1405.   This is especially problematic considering that the Marine Corps had previously chosen not to decertify the plaintiff based upon the same factual finding (*i.e.*, a misuse of funds).[3]  The General's decision also does not reveal whether he considered the plaintiff's performance evaluations or the argument that the "misuse of funds" was a clerical error, much less what weight they deserved.  *See id*; AR at 226.   It may be that the General had a perfectly appropriate reasoning for reaching the conclusion that he did, but "the boilerplate language used by [General Spiese]

---

[3] The prior decision not to decertify the plaintiff stated that "any future impropriety *can result* in the loss of his instructor certification."  AR at 321 (emphasis added).   General Spiese provided no rationale, however, that would explain why he chose not to decertify the first time but did choose to decertify the second time.  This sort of departure from prior precedent, without explanation, is usually considered arbitrary and capricious.  *See, e.g.*, *Trump Plaza Assocs. v. NLRB*, 679 F.3d 822, 827 (D.C. Cir. 2012) ("'Where an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious.'" (quoting *Pirlott v. NLRB*, 522 F.3d 423, 432 (D.C. Cir. 2008)).

makes it impossible to discern [his] 'path.'"  *Dickson*, 68 F.3d at 1405.  Therefore, the Court

concludes that the decertification decision of the Marine Corps in the plaintiff's case must be

vacated as arbitrary and capricious, and this matter must be remanded to the agency for renewed

consideration of the plaintiff's case.

  The Navy's decertification decision was also arbitrary and capricious, though for a

slightly different reason.  The Certification Board's remarks indicate that it found that the

plaintiff had "stopped doing his job, including not attending mandatory meeting with parents of

cadets," and that he had "elected to <u>NOT</u> make comments" on his most recent performance

evaluation that "could have been beneficial to his cause."  AR at 312.  The Board notably did not

include any finding that the plaintiff had actually misused funds (as opposed to the withdrawal

being a clerical error); rather, the Board merely noted that the plaintiff stood "accused of misuse

of funds [a] second time."  *Id.*  In a moment of remarkable candor, the Board admitted its

indecision based on the record it had before it, stating "[t]his is a difficult call," possibly because

the Board did "not have all the Findings the MCJROTC program had when they decided to

decertify."  *Id.*  Nevertheless, the Board decertified the plaintiff on the rationale that "[s]ince [the

Marine Corps] found cause to [decertify]," the Board was "hard pressed to recommend [Navy

certification]."  *Id.* at 313.  The Board went so far as to make a note that "No USMC Cert $\rightarrow$ No

USN Cert."  *Id.*

  In sum, the Navy's rationale for decertifying the plaintiff was:  If the Marine Corps

decertified, "how can our program not do the same?"  *Id.* at 312.  Rather than give the plaintiff's

certification an independent assessment and consider whether his continued certification was "in

the best interests of the Navy," the Certification Board elected simply to "trust the system" by

relying on the Marine Corps's decertification decision.  Yet, an agency does not act rationally

when it blindly tethers its decisionmaking to that of another agency because such faith in another agency's decisionmaking fails to account for the very real possibility that the other agency acted improperly or irrationally.  Indeed, the other agency's decisionmaking could very well be arbitrary and capricious, as the Marine Corps's decisionmaking was in this case.  Therefore, because the Navy's decertification decision relied upon the decertification decision of the Marine Corps without making its own independent assessment of the plaintiff's case, the Navy's decision must also be vacated as arbitrary and capricious, and this matter must be remanded to the agency for renewed consideration of the plaintiff's case.[4]

## IV.    CONCLUSION

For the reasons set forth above, the defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 8 is DENIED, and the plaintiff's Cross-Motion for Summary Judgment, ECF No. 11 is GRANTED.  The decisions by the defendants to decertify the plaintiff as an instructor in the MCJROTC and the NJROTC are vacated, and this matter is remanded to the Marine Corps and the Navy for reconsideration of the plaintiff's continued certification as a JROTC instructor.  An appropriate Order accompanies this Memorandum Opinion.


Date:  September 29, 2012


/s/ *Beryl A. Howell*

BERYL A. HOWELL
United States District Judge

---

[4] In light of the fact that the Court grants the plaintiff the injunctive relief that he seeks on statutory grounds, the Court need not consider the plaintiff's constitutional claim that he was denied due process.